**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID A. HUFFMAN,

Defendant-Appellant.

No. 11-3370
(D.C. No. 2:09-CR-20073-KHV-1)
(D. of Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **EBEL**, and **HOLMES**, Circuit Judges.

David Huffman pleaded guilty to possession of child pornography in
violation of 18 U.S.C. § 2252(a)(4)(B). In deciding not to impose the ten-year
sentence based on the United States Sentencing Guidelines (USSG), the district
court sentenced Huffman to a five-year term of probation, the terms of which he
violated within eighteen months of imposition. At a hearing to address these
violations, the district court revoked his probation and sentenced him to ten years'

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

imprisonment, applying the sentencing guideline range recommended in the Presentence Investigation Report (PSR).

Huffman appeals this sentence, arguing only that it is substantively unreasonable. We find no error in the district court's application of its sentencing discretion. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Huffman was discovered by Kansas law enforcement in possession of child pornography. Using a file sharing service, a detective was able to download three videos depicting minors engaged in sexually explicit conduct and linked the IP address to a residence where Huffman lived.

His residence was searched, where law enforcement located in Huffman's bedroom the computer from which the videos in question were downloaded. When confronted about the downloads, Huffman admitted he had installed a computer program on his computer and had used the program to download music, wrestling videos, and pornography. A subsequent search of Huffman's computer revealed that it contained child pornography.

A grand jury indicted Huffman on one count of distribution and one count of possession of child pornography. Huffman was arrested and released on bond. As relevant here, the terms of his pretrial release included a requirement that Huffman submit to GPS monitoring of his movements and that he refrain from

-2-

viewing any form of pornography. Huffman had continual problems complying with these conditions.

Huffman pleaded guilty to the child pornography possession charge in February 2010. He entered into a plea agreement in which the government agreed that it would dismiss the pornography distribution charge and that Huffman be sentenced to a term of 60 months' probation with no term of imprisonment. As a condition of the probation, Huffman had to enroll and successfully complete the Long Term Residential Recovery and Rehabilitation Program at the City Union Mission in Kansas City, Missouri. The plea agreement was, of course, subject to the approval of the district court at Huffman's sentencing hearing.

The probation office recommended that the district court follow the guideline range of ten years.[1] In advance of the sentencing hearing, the office prepared a PSR for Huffman. The PSR first recounted the offense conduct relevant to sentencing, which included the three child pornography videos downloaded in February 2008. Further, the PSR stated that Huffman himself admitted to downloading two additional child pornography videos, though he

---

[1] The PSR provides the guidelines sentence for Huffman's offense conduct and then notes the recommendation of the plea agreement and the fact that instituting the sentence in the plea agreement would constitute a variance from the otherwise applicable guideline range. The district court interpreted the probation office to advocate the guidelines range sentence, *see* R., Vol. 2, at 61, but on the record before us it is unclear whether the probation office explicitly took this position.

stated that he immediately deleted them when he discovered they were of child pornography.

The PSR then noted that a forensic examination of Huffman's computer revealed further child pornography images. The summary of the forensic analysis in the PSR states:

> The forensic examination of the defendant's computer revealed approximately 19 (.jpg/.jpeg) images, 8 (.mpg) images, five video files (which lasted approximately 3 minutes 30 seconds; 14 minutes 30 seconds; 3 minutes; 2 minutes; and 20 seconds, respectively), and one video file that contained numerous videos and images combined into one streaming program. This video lasted approximately 29 minutes. These images contained pictures of minors who had not attained the age of 12 years, as well as material that portrayed sadistic or masochistic conduct, or other depictions of violence.

R., Vol. 3, at 9.

The PSR therefore attributes to Huffman 27 child pornography images and between six and eleven child pornography videos. Huffman raised no objection to the offense conduct described in this portion of the PSR, and raised no objection to a later PSR finding that he had downloaded 600 images (with each video counting as 75 images).[2]

---

[2] The Guidelines also distinguish between videos that are five minutes in length and those that are substantially more than five minutes. *See* USSG § 2G2.2 app. note 4(B)(ii). The PSR suggested that an upward departure may be warranted for two of the videos Huffman possessed, which were approximately 14 and 30 minutes in length. Huffman objected to this finding in the PSR, arguing that both of the video clips had a mixture of adult and child pornography and that

(continued...)

The PSR further notes that Huffman, who was 18 years old at the time when the offense conduct occurred, "indicated he is most interested in pornography involving females who are 18 to 20 years old." *Id*. at 8. He further emphasized he "is not attracted to girls under the age of 14 and believes pornography depicting pre-pubescent girls is 'wrong,'" but nevertheless "admitted to having used terms such as 'young,' 'teen,' 'barely legal,' and 'real young teens' to locate files to download using [a file-sharing program]." *Id*. at 9. Huffman also conceded he "occasionally download[ed] child pornography files, which he usually deleted once he realized what type of file they were." *Id*.

Under USSG § 2G2.2, the base-level offense for possession of child pornography is 18. The PSR started at this level and recommended the following enhancements based on Huffman's specific offense conduct: (1) a two-level enhancement because the offense involved a prepubescent minor; (2) a five-level enhancement because the offense involved the distribution for the receipt or expectation of receipt of a thing of value; (3) a four-level enhancement because Huffman possessed material portraying sadistic or masochistic conduct or other depictions of violence; (4) a two-level enhancement because the crime involved

---

[2](...continued)
the length of the child pornography portion may have been less than five minutes. No one addressed this objection at the sentencing hearing and it would not appear to affect the sentencing analysis, given that the guidelines range, even without some sort of upward variance for the longer videos, exceeded the statutory maximum allowed for the underlying crime.

the use of a computer; and (5) the aforementioned five-level enhancement for possession of over 600 images.

Finally, the PSR recommended a three-level downward adjustment for acceptance of responsibility and for entering a timely plea, which meant the PSR concluded Huffman's final offense level was 33. Given Huffman's criminal history category of 0, the PSR determined this offense level yielded a guideline range of 135 to 168 months. Nevertheless, because the statutory maximum for Huffman's crime was ten years, the PSR concluded that the guideline range was 120 months. *See* 18 U.S.C. § 2252(b)(2); USSG § 5G1.1(c)(1). Huffman has never presented any objections to the calculation of his sentence or the application of any of the enhancements. And he has conceded that his proper guidelines range is 120 months. *See* Aplt. Br. at 17.

Just before his sentencing hearing, Huffman was arrested for violations of the terms of his pretrial release. The probation office alleged Huffman had not complied with its GPS monitoring requirements, had possessed a cell phone without informing his probation officer, and had received text messages containing adult pornography on the phone. At his bond revocation hearing, Huffman admitted to these violations and the district court ordered that he remain in custody in advance of his sentencing hearing.

At sentencing, pursuant to the aforementioned plea agreement, the government and Huffman had agreed to a sentence of 60 months of probation to

be completed at City Union Mission, in lieu of the guidelines sentence of 120 months' imprisonment. The district court noted the large difference between the sentence calculated in the PSR and the one proposed in the plea agreement and emphasized: "[I]t's very unlikely that you'll persuade me this is an appropriate disposition especially given the sentences that other people routinely receive in similar situations in this court." R., Vol. 2, at 54. The court then asked to hear the government's justification for this large downward variance.

In response, the government offered that several factors justified a lower sentence. These included Huffman's age and immaturity, and the nature and size of his pornography collection. The government also suggested Huffman "might be somebody that we could take a chance on. This might be somebody we could put in a program to educate him and then perhaps never see him again." *Id.* at 58. At the same time, the government acknowledged: "I honestly in these kinds of cases never believe that we're never going to see them again. I always think they will be back because it is such an engrained part of their behavior and their sexual preference in many cases." *Id.* Thus, the government reasoned, while taking the chance with Huffman entailed some risk, the risk was mitigated by the fact that if Huffman "violates the terms of this probation, he agrees to [have the probation] immediately revoked and [be] sent back to prison[,] and there's no limit on what the [c]ourt can do at the time of a revocation. The [c]ourt has also sentencing options available to it at that time." *Id.*

-7-

Next, Huffman through his attorney, addressed the court. He reiterated many of the comments of the government and made the case for the City Union Mission program, which he characterized as a structured environment that would help him more than prison.

Despite all of these arguments, the district court was wary to grant such a substantial departure for Huffman. The court doubted how Huffman could "possibly succeed in [the City Union Mission] program given his obvious immaturity, his lack of educational commitment [given that he only completed 9th grade] and success so far in his life, and his apparent refusal to come to terms with the fact that this is a serious violation and that it has consequences." *Id.* at 59. The court noted that its appraisal of Huffman was reinforced by reviewing the PSR and observing him at his bond revocation hearing.

Further, the district court dismissed most of the government's other justifications for probation. It acknowledged the difference in size and character of Huffman's collection but suggested that it did not "justif[y] the difference between five years on probation and 120 months in custody, and noted that it would be a "very, very dramatic departure," to grant to Huffman. *Id.* at 74. The district court further recalled that a different child pornography defendant had been given a break similar to the one offered to Huffman, but that sentence had turned into "a disaster." *Id.* The court then concluded by suggesting one could

not "make a principled distinction between the facts of this case and the way we treat all the other [child pornography] cases." *Id*.

At the insistence of both parties, the court continued the sentencing hearing to allow time to consider testimony from Laura Mars, a state-certified sex offender treatment provider, and Dr. Steven Mandracchia, a psychologist. Both experts had treated Huffman and offered testimony diagnosing the basis of his desire to view child pornography. At two subsequent hearings, they also spoke to and endorsed the specific probability of his success in the City Union Mission program.

Finally, at the second subsequent hearing, Huffman himself offered some words on his situation. He said his time in prison for the violations of the terms of his pretrial release was a "nightmare" of an experience, that he had been immature, and that he wanted to complete the City Union Mission program. *Id*. at 183. The court then addressed Huffman directly, telling him: "You understand that if I accept this [p]lea [a]greement and let you participate in this program instead of taking you into prison for 120 months, that if you . . . fall off the track and mess up while you're in this program, that you'll be standing right back here and that there won't be any second chances?" *Id*. at 184. To this admonishment Huffman responded, "If I mess up, I deserve it." To which the court responded, "Okay, I'm going to remember you said that. I think it probably should be obvious to everyone that I have some misgivings about this and that the Probation

Office has, in fact, recommended that I reject this [p]lea [a]greement and sentence you to 120 months in custody." *Id.*

The court then went on to sentence Huffman to 60 months' probation. It reasoned as follows:

> You know, I'm not 100% convinced that's the wrong thing to do, but in the circumstances, having heard the testimony of the experts that have evaluated your case and have had a chance to spend more time with you than I have; also considering your arguments which your attorney has made and the fact that the Assistant United States Attorney has been brought around to agree with this particular proposal, I would propose that your sentence be . . . 60 months['] probation.

*Id*. at 184.

In sentencing Huffman, the district court imposed about three dozen "special" and "standard" probationary conditions. As relevant here, some of these conditions required Huffman to: (1) submit written reports within the first five days of each month; (2) follow his probation officer's instructions, including those related to taking proper steps for obtaining lawful employment; (3) work regularly at a lawful occupation; (4) refrain from excessive use of alcohol; (5) participate in a program for substance abuse and submit to random testing; (6) not possess nor have under his control any material depicting sexually explicit conduct; (7) consent to computer monitoring of any device he sought to use; and (8) participate in mental health or sex offender treatment.

Huffman enrolled in the City Union Mission program but soon struggled with its rules. On one occasion he in fact tested positive for use of prohibited prescription drugs and admitted to taking his friend's medication. Despite these problems, he successfully completed the City Union program in August 2011 and moved into a home with his family to finish the terms of his probation.

On November 21, 2011, however, about a year and a half after Huffman's sentencing, the probation office notified the district court that Huffman had violated some of his conditions of probation. In particular, the violation report alleged that Huffman: (1) twice failed to submit a monthly report to his probation officer; (2) twice failed to attend job placement meetings and failed to satisfactorily complete homework for such meetings; (3) failed to secure employment; (4) repeatedly consumed upwards of eight alcoholic drinks in one sitting at a friend's home; (5) missed one drug screening and tested positive for unauthorized prescription medication during his time in the City Union Mission program; (6) watched adult pornography on Cinemax on one occasion; (7) was present at his family's home on one occasion in close proximity to an internet-accessible computer that at the time was not password protected from him; and (8) missed one of his weekly sex offender treatment sessions.

The probation office noted that these violations all constituted Grade C parole violations under the Guidelines, which meant that the recommended USSG range for the violations was three to nine months' imprisonment. *See* USSG

§7B1.4(a); *see also* R. Supp. Vol. 1, at 19.  Nevertheless, the probation office ultimately recommended for this Class C violation that Huffman reside in the "community corrections component" portion of a halfway house for a period of up to 120 days at the house, which would allow him to leave the house for work at the direction and discretion of the probation office.  R., Vol. 1, at 49.

On December 5, 2011, the district court conducted a hearing on the violations.  The court explained its disappointment with Huffman's noncompliance with the sentence of probation:  "I'm interested in what we should do about this, but I guess to just sort of set the stage, I am thinking that putting this defendant on probation was a huge mistake and that I should have rejected the [p]lea [a]greement."  R., Vol. 2, at 192.

In response, Huffman did not dispute any of the factual allegations in the report but attempted to place them in context.  For example, he suggested that his limited access to adequate forms of transportation helped explain his less-than-perfect attendance at the required meetings and his failure to find a job.  He further noted that his status as a sex offender and a convicted felon made him a less attractive candidate to employers.  Moreover, Huffman conceded to excessive alcohol use, to failing to turn in two (out of fifteen) status reports, and the one-time viewing of pornography, but he attempted to justify these as minor violations.  And Huffman emphasized that the halfway house program recommended by the probation office (in which Huffman had already enrolled by

-12-

the time of the sentencing hearing) would aid him in finding work and addressing the causes of these violations by providing him with a more structured environment in which to rehabilitate.

The district court was not convinced by this argument. It noted that four days prior to the date of the violations hearing, Huffman had violated another condition of his probation: namely, that he attend a session related to his employment search. In response, Huffman attempted to justify this violation on the ground that Huffman's move to a halfway house had changed his living environment so much that he had forgotten about the appointment.

Next, the government articulated its position. It urged a six-month prison sentence followed by an indeterminate period of supervision, reasoning that Huffman's contumacious attitude toward the court and his sentence, not any individual violation in itself, justified such a sentence. As the government reasoned: "I think his most egregious violation—or the problem [Huffman] has . . . is not the violations themselves, but his attitude towards supervision. He doesn't seem to get it. He would still be in prison—we wouldn't be dealing with him now because he would be in prison if we hadn't given him this opportunity." *Id*. at 208.

After hearing arguments from both sides, the district court rejected the sentencing recommendations of the probation office, the government, and Huffman. The district court imposed a ten-year sentence of imprisonment, to be

followed by twenty years of supervised release. Addressing Huffman directly, the

court reasoned this sentence was justified for the following reasons:

> It seems to me like this is too little too late in terms of getting your act together. I agree, now that I've had a chance to watch you on supervision, that you do not have the capability or the maturity of complying with supervision in this court and doing what the Court expects you to do. Your noncompliance had started a long time before you were placed on probation. It stems back even to prior to your plea. And I think between your lack of maturity, your failure to take responsibility for your conduct, and your apparent lack of appreciation for the Court's obligation and authority in this area, your performance on probation has been a disaster. And I think the only way that you are going to get the point here is if we make you serve a significant period of prison time which will address all the objectives of federal sentencing law that the original sentence probably did not sufficiently take into account given your own personal history and characteristics.

> \* \* \*

> I agree with what the government says, there's probably not any single violation here that would justify this kind of a sentence, but when you look at the pattern and the history of noncompliance as well as what I can only characterize as an attitude problem towards supervision and toward the Court and your lack of effort at compliance, I think this is the only appropriate disposition.

Subsequent to the sentencing hearing, the district court issued a Sentencing

Memorandum, further justifying its decision:

> Based on defendant's non-compliance from the beginning of his probation, . . . the Court finds that only a significant period of prison time will address all of the

-14-

objectives of federal sentencing law and the factors set forth in 18 U.S.C. § 3553(a). The Court therefore revokes defendant's probation. Relying on the statutory range for the original offense, the Court sentences defendant to ten years in custody followed by 20 years of supervised release.

R. Vol. 1, at 57.

Huffman objected to this sentence as substantively unreasonable and timely filed this appeal challenging the district court's exercise of its sentencing discretion.

## II. Analysis

### A. Standard of Review

We review Huffman's challenge to the substantive reasonableness of his sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). In addressing this question, we examine "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Reyes-Alfonso*, 653 F.3d 1137, 1145 (10th Cir. 2011) (internal quotation marks omitted). To take into account the § 3553(a) factors, a district court should consider such things as "the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment." *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006).

The Supreme Court's decision in *Gall* dictates that our review of how the district court weighed the § 3553(a) factors accords deference to the district court's greater expertise and experience with sentencing. "As *Gall* observes, a sentencing 'judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.'" *United States v. Smart*, 518 F.3d 800, 807 (10th Cir. 2008) (quoting *Gall*, 552 U.S. at 58–59). And in contrast to this court, the district court has more experience in making these determinations, and we "lack the district courts' institutional experience of imposing large numbers of sentences, the vast majority of which are never appealed." *Id.* (citing *Gall*, 552 U.S. at 598 n.7).

Therefore, in reviewing the district court's exercise of its sentencing discretion, "[w]e may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo. Instead, we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the [sentence]," and "we must therefore defer not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *Id*. at 808 (citing *Gall*, 552 U.S. at 58–59).

Further, "[w]hen a district court imposes a within-[g]uidelines sentence, the court must provide only a general statement of its reasons, and need not explicitly refer to either the § 3553(a) factors or respond to every argument for leniency that

it rejects in arriving at a reasonable sentence." *United States v. Lente*, 647 F.3d 1021, 1034 (10th Cir. 2011) (internal quotation marks omitted). Given that, we presume a sentence is reasonable if it is within the properly calculated guideline range. *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). If the sentence is within the guidelines range, a defendant normally bears the burden of rebutting this presumption in light of the § 3553(a) factors. *Id.*

## B. Merits

Huffman's resentencing was triggered by his violation of the terms of his probation. Upon a finding that Huffman had committed a violation, the district court had the statutory authority to resentence Huffman for his underlying criminal offense. By its terms, 18 U.S.C. § 3565(a)(2) provides a district court with the authority to "revoke the sentence of probation and resentence the defendant under subchapter A" of the Sentencing Guidelines, which is the subchapter related to sentencing within the applicable guidelines range for the original offense conduct.

In exercising this statutory authority to resentence Huffman, the district court imposed the guidelines range sentence calculated in the PSR.[3] As noted

---

[3] In its Sentencing Memorandum, the district court referred to the "statutory range for the original offense." R., Vol. 1, at 57. But the record indicates that the district court meant the *guidelines range* for the offense, which is the statutory maximum in this case. It would be a procedural error for the district court to solely rely on the *statutory* range for an offense as opposed to the range dictated by the *guidelines*. *See Gall*, 552 U.S. at 49.

above, the PSR calculated Huffman's range as between 135 and 168 months, which is in excess of the statutory maximum sentence of 120 months. While the PSR's sentencing calculations are not entirely clear,[4] because Huffman never objected to this methodology, the application of various sentencing enhancements, or the ultimate calculation of his guidelines range sentence, we proceed on the basis that the 120-month sentence is the proper guideline sentence.

Because we consider—and Huffman concedes—the sentence here is within the properly calculated guideline range, we must next determine whether Huffman can overcome the presumption of reasonableness we apply to such sentences. We conclude he cannot.

First, it is clear that the district court had a substantial basis for imposing the sentence it chose. It reviewed two separate PSRs for Huffman, the probation violation report, and a supplemental report documenting a separate violation that had occurred after the parole revocation hearing had been scheduled. Further, it observed Huffman's demeanor during several hearings. And, of course, the court had misgivings from the beginning to deviate from the guidelines recommendation.

---

[4] In particular, the PSR does not fully explain the basis for the five-level enhancement for possession of over 600 images, *see* USSG § 2G2.2(b)(7)(D), and the five-level enhancement for distribution for the receipt or expectation of receipt of a thing of value, *see id*. § 2G2.2(b)(3)(B).

Despite these misgivings, when the district court chose probation, it put Huffman on notice that a violation of the terms of his probation would result in the possibility that he would be sentenced for his underlying criminal offense. When Huffman breached this trust by violating the terms of his probation, the district court—again informed by its prior observations of Huffman and its review of the relevant violation reports—opted to impose the sentence for Huffman's underlying crime as permitted by § 3565. The district court's discussion of its reasoning for imposing this sentence touches upon a number of the § 3553(a) factors, including Huffman's characteristics as a defendant, the nature of his offense, and both the seriousness of his crime and need to adequately deter it. In deciding on this sentence, the district court satisfied the "generalized statement of reasons" requirement necessary when a court imposes a within-guidelines sentence.

Huffman raises a number of arguments resisting this conclusion, none of which we find persuasive. First, citing 18 U.S.C. § 3553(a)(1), which directs the sentencing court to consider the nature and circumstances of the offense, Huffman suggests that the "nature and circumstances of [his] offense remain the same as when the district court originally sentenced him on probation," and that the district court did not sufficiently consider this factor. Aplt. Br. at 9.

This argument mischaracterizes the record and relies on a misinterpretation of our jurisprudence on substantive reasonableness. The most important material

change in Huffman's circumstances was his violation of a number of the terms of his probation, violations which triggered the revocation hearing and demonstrated to the district court, in light of its experience with similar defendants and with Huffman in particular, that a different sentence was necessary. In other words, the court concluded it had made a mistake with its initial sentence, a mistake that needed correction based on new information—to wit, that "[Huffman's] performance on probation ha[d] been a disaster." R., Vol. 2, at 212.

Further, Huffman incorrectly suggests that the district court needed to explicitly consider every § 3553(a)(1) factor on the record for us to affirm his sentence. But the record is clear the court understood its § 3553(a) responsibilities, and because Huffman's sentence here is within the guidelines range, only a generalized statement of reasons is necessary.

Similarly, Huffman notes he did relatively well at City Union Mission; that his two expert witnesses testified at sentencing that he had a less serious interest in child pornography; that the district court could have endorsed various sentences below the guidelines range; and that in *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court suggested that youth could be a mitigating factor in determining an appropriate sentence. Huffman suggests that the district court needed to consider this in relation to a number of the § 3553(a) factors.

But Huffman's recitation of these undisputed facts, along with his reliance on *Roper*, ignores the fact that his attitude toward his sentence and his repeated

violations (both before and after sentencing) demonstrated to the district court that it needed to adjust Huffman's sentence in light of his breach of trust. As it was entitled to do, the district court weighed Huffman's recividist tendencies more heavily than his relative youth or his experts' appraisal of his non-exclusive interest in child pornography. And his lack of success on probation undercut the expert's expectation that he would perform well in a structured environment outside of prison. On these matters, we defer to the district court in according the appropriate weight to the § 3553(a) factors.

Next, Huffman suggests, under the Guidelines, a Grade C parole violation for someone with Huffman's criminal history merits only three to nine months of imprisonment, not ten years. *See* USSG § 7B1.4(a). While this is true, Huffman's argument fails to acknowledge that the district court has the authority under 18 U.S.C. § 3565 to either impose the three-to-nine month sentence or to resentence for the underlying crime. Further, the disparity between the guidelines sentence for the Grade C violation and the guidelines sentence for the underlying offense cannot of itself mean that Huffman's sentence is unreasonable. "To hold otherwise," as the Second Circuit reasoned, "would be to suggest that a defendant is in a better position to argue the substantive unreasonableness of a [g]uidelines sentence for a particular crime of conviction *after* violating probation than he is before breaching the court's trust." *United States v. Verkhoglyand*, 516 F.3d 122, 135 (2d Cir. 2008) (emphasis in original).

Finally, throughout his briefing, Huffman emphasizes the disparity between the sentence the defense sought, the one sought by the government, and the one ultimately imposed by the district court at his revocation hearing. But this is only because Huffman was unable to comply with the leniency granted by the court and disagrees, as a policy matter, with the sentencing regime for child pornography possession established by Congress and the Sentencing Commission. In any case, this is not an argument that militates in favor of a finding of substantive unreasonableness.

In sum, we affirm Huffman's sentence as a proper exercise of the district court's sentencing discretion.

## III. Conclusion

Based on the foregoing analysis, we AFFIRM the district court's sentence.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge