FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 23, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

                            No. 13-6188

JORY MICHAEL NANCE,

      Defendant - Appellant.

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:12-CR-00267-HE-1)**

Jacob L. Rowe, Oklahoma City, Oklahoma, for Defendant-Appellant Jory Michael Nance.

Brandon T. Hale, Assistant United States Attorney (Sanford C. Coats, United States Attorney and Chris M. Stephens, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee United States of America.

Before **BRISCOE,** Chief Judge, **EBEL,** and **MATHESON,** Circuit Judges.

**EBEL**, Circuit Judge.

A jury convicted Defendant-Appellant Jory Nance of multiple counts of transporting child pornography and receiving or attempting to receive child pornography. He challenges those convictions, contending 1) the district court erred in admitting evidence of his uncharged bad acts under Federal Rule of Evidence 404(b)(2); and 2) there was insufficient evidence for a jury to find that he attempted to receive child pornography. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

Viewed in the light most favorable to the Government, see United States v. Battles, 745 F.3d 436, 453 (10th Cir. 2014), the evidence at trial established the following. Using peer-to-peer file-sharing software, Nance downloaded child pornography on his laptop computer from sometime in 2009 through April 2012. He also used this software to share child pornography with others, including an Edmond, Oklahoma detective who was able to download eight files containing child pornography from Nance during March and April 2012. This resulted in the United States charging Nance with eight counts of transporting child pornography, in violation of 18 U.S.C. § 2252(a)(1).

The detective turned the child pornography she had obtained from Nance over to FBI agents, who began watching Nance's home, where he lived with his wife, their two-year-old son, and his wife's five-year-old daughter. After Nance noticed one of the agents outside his home, he stopped downloading child pornography and began deleting it from his laptop; he also researched how to reformat his computer. Shortly thereafter,

2

FBI agents seized Nance's laptop. At that time, Nance acknowledged that he was the only one who used the laptop, but told agents, falsely, that the computer had been inoperable for several months due to computer viruses.

The FBI conducted a forensic analysis of Nance's laptop. Although Nance had superficially deleted most of the child pornography from the laptop, the FBI was able to recover 1,000 previously-deleted images of child pornography, mostly involving preteen girls. The FBI was also able to recover the names of a number of deleted files, although the images linked to those files were not recoverable. In addition, the computer's automatic logs had documented the searches Nance conducted on peer-to-peer networks using terms associated with child pornography. These logs also had chronicled when Nance downloaded the images and files of child pornography that the FBI recovered from his computer, as well as when Nance watched this pornography. Based on its forensic analysis, the United States charged Nance with multiple counts of receiving or attempting to receive child pornography, in violation of 18 U.S.C. § 2252(a)(2).

Nance's defense at trial was that he did not know about the child pornography on his computer and that it must have been there as the result of computer viruses or hackers. The jury rejected that defense and convicted Nance of eight counts of transporting child pornography and forty-nine counts of receiving or attempting to receive child pornography.[1] The district court sentenced Nance to a total of sixty-four

---

[1] The jury acquitted Nance of two counts of receiving or attempting to receive child pornography.

3

months in prison on these convictions, followed by five years' supervised release.

## II. DISCUSSION

### A. The district court properly admitted evidence of Nance's uncharged bad acts under Federal Rule of Evidence 404(b)(2)

Nance first challenges the district court's decision to admit evidence of his other,

uncharged bad acts, including evidence that

> 1) his laptop contained over 1,000 previously-deleted images, pictures, and videos of child pornography;
>
> 2) Nance used his computer, at a time when he claimed it was inoperable, to access the website www.purenudism.com; and
>
> 3) two years before the charged offenses, Nance viewed two videos with file names indicating they contained child pornography.[2]

---

[2] As to each of these three categories of evidence, the record shows the following:

1) Prior to trial, the Government notified Nance that it intended to present testimony from its computer expert that he had recovered 1,000 previously-deleted images of child pornography from Nance's computer. Nance objected because those images had not been linked to him. After hearing argument, the district court ruled that the Government could present this evidence to the jury under Rule 404(b)(2) in order to prove Nance's motive and intent. At trial, the Government first presented evidence that Nance admitted that only he had used the laptop. The FBI's computer expert then testified that he had "found around a thousand" previously-deleted "pictures and videos of child pornography" on Nance's laptop, and that the expert had also been able to find some, but not all, of the file names associated with these images. (Aplt. App. at 641). Nance did not object to this testimony at trial, and so he never requested any limiting instruction as to this evidence. On cross-examination, the computer expert initially testified that he had not looked at every one of those images, but then stated that he had seen each of them displayed, and that he and the FBI case agent had deemed each of these images to qualify as child pornography.

2) Prior to trial, the Government also notified Nance that it intended to present evidence that, on May 12, 2012, after he had noticed the FBI watching his home and had stopped downloading child pornography, and at a time when he claimed that his computer was

4

inoperable, Nance used his laptop to access the website purenudism.com. Nance objected because the content of the purenudism.com website, photos of naked children, is not pornographic. (The Government does not contend that it is.) The district court allowed this evidence under Rule 404(b)(2) to show Nance's opportunity to commit the charged offenses because this evidence rebutted his statement to FBI agents that his laptop was inoperable. At trial, then, the FBI's computer expert testified that, on May 12, 2012, Nance had used his laptop to view pictures on purenudism.com for about ten minutes. The court also admitted seven pictures from purenudism.com that the FBI's computer expert recovered from Nance's laptop. (It is not clear when Nance downloaded these pictures.) When the Government introduced these photographs, Nance noted his "previous objection" and the court gave jurors a limiting instruction:

> THE COURT: [Exhibits] 104 through 110 will be admitted. But, ladies and gentlemen, I would advise you, at the outset I explained to you that there would be some types of evidence that might come in for only a limited purpose, you may consider it only for a limited purpose. I would advise you that this evidence which you're about to see in terms of these images to the extent that they relate to any circumstances other than those alleged in the indictment, or other than downloads or files referred to in the indictment, they are admitted for the limited purpose as they may bear on the defendant's intent or motive, or at least with respect to - - well, essentially with respect to intent or motive. So please evaluate the evidence only for that purpose and not for another.

(Id. at 637.) And, prior to jurors' deliberations, the court again gave a limiting instruction:

> You have heard evidence as to materials allegedly found on defendant's computer relating to actions or conduct not related to the specific charges in this case. As I indicated at the time that evidence was admitted, you may consider that evidence only as it bears on the defendant's motive, opportunity, or intent, but for no other purpose.

(Id. at 238.)

3) Prior to trial, the Government notified Nance that it intended to present evidence that, almost two years before the charged offenses occurred, he had viewed two specific files: "HotLols-Artesia 006," viewed as early as July 5, 2010, and "stickam-2010 13 yo hot skinny bt," viewed on September 9, 2010. (Id. at 30.) Nance objected because the laptop had not been linked exclusively to him during these times. The district court permitted

5

## 1.  District court's ruling

Nance challenges the district court's decision to admit this evidence under Rule 404(b)(2) to show his intent, motive and opportunity to commit the charged offenses.  To understand his arguments, however, we start by noting that the Government actually offered this evidence, not only under Rule 404(b)(2), but also under Federal Rule of Evidence 414(a) to show Nance's propensity to commit crimes involving child pornography.  The district court declined to admit evidence of Nance's uncharged bad acts under Rule 414(a) for this purpose.

Although "[t]he rules of evidence generally prohibit the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts," Rule 414(a) "provides an exception to this general rule" by allowing the jury in a prosecution for child molestation to consider the fact that the defendant has committed other acts of child

the Government to present this evidence under Rule 404(b)(2) as evidence of Nance's motive or intent.  But at trial it does not appear that the Government's computer expert testified to Nance's viewing these two specific files in 2010.  Instead, the expert testified more generally that the log on Nance's computer indicated that in 2010 he had viewed files with names involving the word "stickam" or "Lol," suggesting they contained child pornography.  (Id. at 658.)  Nance did not object to this trial testimony and so did not request any limiting instruction.  Any prejudice to the defense stemming from this testimony was ameliorated by the expert's earlier testimony that he found child pornography on Nance's computer going back further in time to 2009.  Nance did not object to that testimony, either.

We would mention one final category of evidence.  At one point in his opening brief, Nance seems to challenge, the admission of the Government's Exhibits 101 through 103, which are files recovered from his computer that contain child pornography not linked to any specific offense charged against him.  At trial, defense counsel expressly told the trial judge he had no objection to the admission of these three exhibits.

6

molestation as evidence that the defendant committed the charged offense.[3] United

States v. Sturm, 673 F.3d 1274, 1282 (10th Cir. 2012) (internal quotation marks omitted).

The district court determined that the evidence of Nance's other bad acts was admissible

in this case under Rule 414, but that its probative value was substantially outweighed by

the unfair prejudice it posed to Nance. See Fed. R. Evid. 403 ("The court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of . . .

unfair prejudice . . . ."); see also Sturm, 673 F.3d at 1284 (noting evidence "that satisfies

Rule 414 must [also] be evaluated under Rule 403). For that reason, the district court

declined to admit the evidence of Nance's uncharged bad acts under Rule 414(a) to prove

his propensity to commit crimes involving child pornography.

Unlike Rule 414(a), Rule 404(b)(1) does not allow evidence of a defendant's prior

bad acts when that evidence is offered to prove his propensity to commit crimes. See

United States v. McGlothin, 705 F.3d 1254, 1263 (10th Cir. 2013), cert. denied, 133

S. Ct. 2406 (2013). Instead, Rule 404(b)(2) only permits the introduction of such

evidence to prove other things, such as "motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." And, if requested, the trial

---

[3] Rule 414(a) specifically provides that, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Rule 414(d)(2)(B) defines "child molestation" to include "a crime under federal or state law . . . involving . . . any conduct prohibited in 18 U.S.C. chapter 110," which includes the offenses with which the United States charged Nance in this prosecution, see 18 U.S.C. § 2252(a)(1) and (2).

court must instruct jurors to consider this evidence admitted under Rule 404(b)(2) only for the purposes for which it was admitted. See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).

In the ruling Nance challenges on appeal, the district court determined that the evidence of his uncharged other bad acts was admissible in this case under Rule 404(b)(2) to prove his intent, motive and, "to the extent that it's offered to rebut a suggestion that the computer was inoperable, it comes in . . . to prove opportunity." (Aplt. App. at 443.) In making this determination, the district court concluded that the probative value of this evidence, for these purposes, was not substantially outweighed by any unfair prejudice to Nance. At trial, when requested, the court instructed jurors to limit their consideration of this evidence to the specific purposes for which it was admitted.

**2. The district court did not abuse its discretion in admitting this evidence under Rule 404(b)(2)**

Nance challenges the district court's decision to admit the evidence of his uncharged bad acts under Rule 404(b).[4] We review that decision for an abuse of

---

[4] Nance argues for the first time on appeal that, because Rule 414 applies to this "child molestation" prosecution, what he views as "the far more general" Rule 404(b)(2) does not apply here at all. (Aplt. Br. at 20). Reviewing this argument for plain error, we reject it because Rule 414 specifically provides that it "does not limit the admission or consideration of evidence under any other rule," Fed. R. Evid. 414(c). See United States v. Seymour, 468 F.3d 378, 383-85 (6th Cir. 2006) (relying in part on Rule 414(c) to reject argument that Rule 414, which permits evidence that the defendant previously sexually assaulted a child, "is the exclusive rule governing child-molestation cases, and not the more general Rule 413," which permits evidence that the defendant previously sexually

8

discretion and "will not reverse . . . as long as the district court's decision falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." Battles, 745 F.3d at 452 (internal quotation marks omitted).

Nance first complains about the seeming inconsistency between the district court's determination that the other bad acts evidence at issue here was too unfairly prejudicial to be admitted under Rule 414, but that evidence was, nonetheless, admissible under Rule 404(b)(2). We do not address the propriety of the district court's Rule 414 determination because no one has appealed from that decision. It could be that the district court erred in excluding the evidence under Rule 414, but that issue is not before us. It is sufficient for us now just to note that the application of Rule 403 may differ depending upon which rule is applied in determining the admissibility of the evidence. Here, we consider only the Rule 403 analysis for evidence admitted under Rule 404(b)(2).

In arguing that that decision was an abuse of discretion, Nance challenges only the district court's determination that the 404(b)(2) evidence's probative value was not substantially outweighed by any unfair prejudice to the defense under Rule 403. We cannot agree.

The evidence at issue was clearly probative under Rule 404(b)(2). Nance's defense at trial was that he did not know about the child pornography on his computer. Evidence that Nance had viewed child pornography on his computer at least two years

assaulted either an adult or a child); see also United States v. Meachum, 115 F.3d 1488, 1490-95 (10th Cir. 1997) (addressing admission of evidence under both Rules 404(b) and 414 where it was not clear under which rule the district court admitted it).

9

before the charged offenses occurred and that the FBI recovered over 1,000 images of superficially deleted child pornography from his computer undercut that defense. Nance also claimed that his computer had been inoperable for several months before the FBI seized it. Thus, evidence that Nance used his computer to access purenudism.com just a week before the FBI seized his computer was probative of whether his laptop was inoperable at that time.

Despite the probative value of this evidence, Rule 403, nevertheless, "mandates excluding [such] evidence . . . if the danger of unfair prejudice substantially outweighs the evidence's probative value." United States v. Brooks, 736 F.3d 921, 940 (10th Cir. 2013), cert. denied, 134 S. Ct. 1526 (2013), and 2014 WL 1384914 (U.S. May 5, 2014) (No. 13-9606). Applying Rule 403, the district court ruled that the probative value of this evidence, offered for the purpose of proving Nance's intent, motive, and opportunity, was not substantially outweighed by its potential for unfair prejudice because the court would, upon the defense's request, instruct jurors to consider the evidence only for the limited purposes for which it was admitted. We cannot say that determination falls outside "the bounds of permissible choice in the[se] circumstances," nor that it is "arbitrary, capricious or whimsical," Battles, 745 F.3d at 452 (internal quotation marks omitted). See United States v. Reddeck, 22 F.3d 1504, 1510 (10th Cir. 1994) (concluding introduction of evidence was not unfairly prejudicial where court gave limiting instruction).

Nance goes on to contend that the only purpose for which jurors actually could

have considered the Government's Rule 404(b)(2) evidence was to prove Nance's propensity to commit crimes involving child pornography. But this argument ignores the fact that, when requested by the defense, the district court instructed jurors to limit their consideration of this evidence to the purposes for which it was admitted. Nance did not challenge at trial, and does not challenge now, the manner in which the district court gave these instructions. "And, absent a showing to the contrary, we presume jurors will conscientiously follow the trial court's [limiting] instructions." Brooks, 736 F.3d at 941 (internal quotation marks omitted). Nance did not request a limiting instruction each time any of the challenged evidence was admitted. But such an instruction was available had he requested it. See United States v. Shippley, 690 F.3d 1192, 1199 (10th Cir. 2012) (noting district court does not err in not giving limiting instruction when the defense does not request one), cert. denied, 133 S. Ct. 901 (2013).

We cannot say that the district court abused its discretion in refusing to exclude this evidence under Rule 403 where the evidence at issue was probative of Nance's intent, motive and opportunity to commit the charged offenses and any unfair prejudice was ameliorated by the court's limiting instructions, which the court gave when the defense requested such an instruction. See United States v. Mangiameli, 668 F.2d 1172, 1176 (10th Cir. 1982) (noting "limiting instruction ameliorated any potential for prejudice in the admission of [the challenged] evidence"). The fact that the jury acquitted Nance of several counts lends further support to our conclusion that jurors did not improperly return verdicts here based on their emotional response to the Government's

11

Rule 404(b) evidence.[5]

## B. There was sufficient evidence to support Nance's convictions for attempting to receive child pornography

Nance next challenges his forty-two convictions for attempted receipt of child pornography, Counts 16-40 and 43-59 (the "attempt accounts"), asserting there was insufficient evidence to support them. "We review this claim de novo, asking only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Battles, 745 F.3d at 453 (internal quotation marks omitted).

The attempt counts were based on computer files that Nance deleted, for which the Government was able to recover the file names, but not any of the images associated with the files. For example, in support of Count 22, the Government presented evidence that, on January 22, 2012, Nance downloaded a file named "PTHC [meaning preteen hard core] 5th October 2011 10yo [year old] Arina masturbates on Webcam.avi." (Aplt. App. at 319.) Although the Government was unable to recover the visual images associated with this deleted file and so could not prove that it contained child pornography, the Government charged Nance with attempting to receive child pornography when he

---

[5] Even if the district court did abuse its discretion in admitting the Rule 404(b) evidence, which it did not, any error would have been harmless in this case because, in light of the other overwhelming evidence of Nance's guilt, the challenged Rule 404(b) evidence did not have "a substantial influence on the outcome," nor does it "leave[] [us] in grave doubt as to whether it had such effect." United States v. Sierra-Ledesma, 645 F.3d 1213, 1226 (10th Cir. 2011) (internal quotation marks omitted).

downloaded that file because he believed it contained child pornography.

Nance argues that a reasonable jury could not convict him on the attempt counts without the Government proving that each of the downloaded files actually contained child pornography. But Nance did not object when the district court instructed jurors that,

> [i]n counts 9 through 59, to prove that defendant attempted to knowingly receive visual depictions of minors engaged in sexually explicit conduct, the government does not have to prove that defendant knew the downloaded file actually contained a visual depiction of a minor engaging in sexually explicit conduct. Rather, the government must prove beyond a reasonable doubt that the defendant believed that the downloaded file contained such a visual depiction.

(Id. at 244) And Nance does not object to that instruction on appeal. In any event, that instruction was proper. "While the underlying offense in this case requires the receipt of images of real-life minors engaged in sexually explicit conduct, the government in an 'attempt' case has no burden to prove that the appellant knew that the downloaded file actually contained such images. Rather, the government is required to prove that the appellant believed that the received file contained such images." United States v. Pires, 642 F.3d 1, 8 (1st Cir. 2011) (citing United States v. Bauer, 626 F.3d 1004, 1007 (8th Cir. 2010); further citation omitted).

There was sufficient evidence from which a rational jury could have found beyond a reasonable doubt that Nance believed that the files underlying the attempt counts contained child pornography. Each of the attempt counts resulted from an Internet search that Nance conducted using search terms that are connected to child pornography,

13

including "pthc," meaning "preteen hard core," "stickam," "vichatter," "kidcam," and "preteen." As a result of these searches, Nance found and downloaded the files underlying the attempt counts, each with a title suggesting it contained child pornography. The title of each of those files included a girl's name, the terms preteen or "pthc" or "lol" (short for Lolita[6]), and/or a specific age between six and thirteen years old; for example, "(pthc) loli Linda 12yo" (Aplt. App. at 319 (count 16)).[7] Some of the file names are much more graphic, for example, "PTHC_Tara fucked like a grownup." (Id. (count 21).) The names of each of these files would support a reasonable jury's finding beyond a reasonable doubt that Nance believed the files contained child pornography. See United States v. Fabiano, 169 F.3d 1299, 1306 (10th Cir. 1999) (relying, in part, on evidence of graphic titles of files to uphold conviction for knowingly receiving child pornography).

The circumstances surrounding Nance's downloading these files further supports such a finding. Nance downloaded all of these files when his wife and their children were out of town visiting her family. This was the same pattern that Nance followed when he downloaded most of the images of child pornography that the Government was able to retrieve from his computer. Moreover, the Government was able to retrieve over

---

[6] "Lolita" refers to Vladimir Nabokov's novel about a thirty-seven-year-old man's obsession and sexual relationship with his twelve-year-old stepdaughter. See http://en.wikipedia.org/wiki/Lolita.

[7] The two attempt counts of which the jury acquitted Nance were the only attempt counts that did not include an age or a pthc or preteen designation.

14

one thousand images of child pornography that Nance downloaded over several years'

time.  Cf. United States v. Fabiano, 169 F.3d 1299, 1305-06 (relying in part on evidence

of defendant's participation for five months in chat room discussions about child

pornography as proof that he knew he was receiving child pornography).  From all of this

evidence, a rationale jury could have found, beyond a reasonable doubt, that Nance

believed when he downloaded the particular files underlying each of the attempt counts

that those files contained child pornography.  That is sufficient to support his convictions

on the attempt counts.[8]

In arguing to the contrary, Nance unpersuasively likens his case to United States v.

Dobbs, 629 F.3d 1199 (10th Cir. 2011).  In Dobbs, the Government failed to prove that

the defendant had knowingly received or attempted to receive two images of child

pornography found on the hard drive of his computer.  629 F.3d at 1200.  But those two

images were found only in the hard drive's "temporary Internet files folder, or 'cache.'"

--------

[8] At a more basic level, Nance argues briefly that there was insufficient evidence to
establish that he knew "of the presence of files containing child pornography on the
computer." (Aplt. Br. at 29.)  But there was evidence from which the jury could have
found, beyond a reasonable doubt, that Nance took affirmative steps to search for and
download files containing child pornography; that he viewed most of the images
contained in these files; that he deleted these files and took steps to reformat his computer
soon after noticing an FBI agent watching his house; and that he lied to FBI agents when
asked about his downloading child pornography.  See United States v. Bass, 411 F.3d
1198, 1202 (10th Cir. 2005) (holding defendant's use of software to remove child
pornography from computer was evidence that he knew those pornographic images were
on the computer).  Further, the Government's computer expert refuted Nance's defense
that these files must have gotten onto his computer as the result of computer viruses or
hackers.  This evidence was sufficient for a reasonable jury to find beyond a reasonable
doubt that Nance knew there was (or had been) child pornography on his computer.

Id. at 1201.

> [W]hen a person visits a website, the web browser automatically downloads the images of the web page to the computer's cache. The cache is populated with these images regardless of whether they are displayed on the computer's monitor. In other words, a user does not necessarily have to see an image for it to be captured by the computer's automatic-caching function. . . . [T]here was no evidence that Mr. Dobbs actually viewed the charged images, much less clicked on, enlarged, or otherwise exercised actual control over any of them. Furthermore, while the forensic specialist explained that a user may manipulate and control an image stored in the computer's cache, he repeatedly admitted that there was no evidence that Mr. Dobbs had accessed his computer's cache, or that he even knew it existed.

Id. at 1201-02.

Here, unlike in Dobbs, the files underlying the attempt counts were not found in the hard drive's cache, nor were they "received" without Nance's knowledge. Instead, the evidence established that Nance obtained these files after using peer-to-peer software to search deliberately for child pornography, which he then intentionally downloaded. See United States v. Haymond, 672 F.3d 948, 955-57 (10th Cir. 2012) (distinguishing Dobbs and upholding conviction for knowingly possessing child pornography that was downloaded using peer-to-peer file-sharing software, following search using terms associated with child pornography).

For these reasons, then, there was sufficient evidence to support Nance's convictions on the attempt counts.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM all of Nance's convictions.

16