FILED
United States Court of Appeals
Tenth Circuit

May 11, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

v.

RICHARD FRANKLIN, a/k/a
westfaliaimplaint,

　　Defendant-Appellant.

No. 13-1519

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:11-CR-00235-WYD-l)**

---

Ty Gee, Haddon, Morgan, and Foreman, Denver, Colorado, for Defendant-Appellant.

Judith A. Smith, Assistant United States Attorney, (John F. Walsh, United States Attorney, and James C. Murphy, Assistant United States Attorney, with her on the brief) Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

_____

Before **BRISCOE**, Chief Judge, **HOLMES**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves child pornography. The defendant, Mr. Richard Franklin, subscribed to a website called "GigaTribe." Like some other popular websites, GigaTribe allowed Mr. Franklin to approve other subscribers as "friends," allowing them into his "tribe." For his so-called "tribe," Mr. Franklin posted previews of pornographic images of children. In posting the previews, Mr. Franklin determined which pornographic images to share and with whom. When GigaTribe "friends" were given access, they could choose what they liked, download the images, and share these images with other subscribers.

At trial, Mr. Franklin was found guilty on five counts, including advertisement or notice of child pornography. The guidelines called for life imprisonment, and the district court imposed five consecutive sentences totaling 100 years.

On appeal, Mr. Franklin contends that the evidence did not support the conviction on advertisement or notice, that the total years of imprisonment involved a substantively unreasonable sentence, and that the district judge improperly found facts (without jury findings) necessary to justify the long sentence. We reject these arguments and affirm.

I.      **"Advertisement or Notice"**

Count One involved the advertisement or notice of child pornography. The statute, 18 U.S.C. § 2251(d)(1), prohibits "any notice or advertisement seeking or

2

offering" to provide or receive pictures of minors engaged in sexually explicit conduct. 18 U.S.C. § 2251(d)(1) (2012).

The prosecution's theory was that Mr. Franklin had provided advertising or notice of images of child pornography by making these images available to 108 GigaTribe "friends." Mr. Franklin argues that this theory was too broad because GigaTribe was a closed network, meaning someone had to be a "friend" to access the child pornography. In Mr. Franklin's view, the "statute is limited to impersonal and indiscriminate communications to the public." Appellant's Second Amended Opening Br. at 17.

This issue involves sufficiency of the evidence. Ordinarily the evidence suffices for guilt if a rational fact-finder could have determined that the prosecution had proven guilt beyond a reasonable doubt. *United States v. Hoyle*, 697 F.3d 1158, 1163 (10th Cir. 2012). To apply that test, however, the district court had to interpret the meaning of § 2251(d)(1)(A). And, on issues of statutory interpretation, we apply de novo review. *See United States v. Phelps*, 17 F.3d 1334, 1337 (10th Cir. 1994) ("We review the district court's conclusions of law regarding the interpretation of the statute *de novo*.").

Engaging in de novo review, we start with the key words in the statute: "advertisement" and "notice." In Mr. Franklin's view, both terms involve interaction with the public and his collection of child pornography was accessible

3

only to his "friends," not the "public." But Mr. Franklin's interpretation of the terms "advertisement" and "notice" is inconsistent with their plain meaning.

Both terms involve everyday words, so we consult a dictionary to ascertain their meaning. *United States v. Roberts*, 88 F.3d 872, 877 (10th Cir. 1996) (per curiam), *superceded by statute on other grounds as recognized in United States v. Meacham*, 115 F.3d 1488, 1491 (10th Cir. 1997). A widely used dictionary, *Webster's Third New International Dictionary*, provides six definitions of the term "advertisement":

1. "the action of advertising: a calling attention to or making known"

2. "warning, admonition"

3. "an informing or notifying: notification"

4. "a calling to public attention: publicity"

5. "a statement calling attention to something: notice"

6. "a public notice; *esp*[*ecially*]: a paid notice or announcement published in some public print (as a newspaper, periodical, poster, or handbill) or broadcast over radio or television . . . ."

*Webster's Third New Int'l Dict.* 31 (ed. Philip Babcock Gove 1993). Two of the six definitions involve a public component. *See id.*

The same dictionary provides eighteen definitions of the noun "notice":

1. a "formal or informal warning or intimation of something: announcement"

2. "a warning, announcement, or intimation given a specified time before the event to take place"

4

3. "notification by one of the parties to an agreement or relation . . . of intention of terminating it at a specified time"

4. "a communication of intelligence or of a claim or demand often required by statute or contract and prescribing the manner or form of giving it"

5. "the condition of being warned or notified"

6. "information, intelligence"

7. "knowledge"

8. "actual knowledge of a pertinent legal fact"

9. "knowledge of a particular fact . . . capable of being acquired by the exercise of reasonable care on the part of the person legally chargeable with it – called also *implied notice*"

10. "knowledge of a particular fact . . . imputed by a positive rule of law to a person regardless of his actual knowledge – called also *constructive notice*"

11. "notion or idea"

12. "attention, heed, observation"

13. "the condition of being noticed"

14. "polite or favorable attention"

15. "a written or printed announcement or bulletin"

16. "a critical account or commentary on a play or other public performance"

17. "book review" and

18. "critical examination"

*Id.* at 1544.

5

In his reply brief, Mr. Franklin acknowledges that the term "notice . . . has substantial definitional bandwidth." Appellant's Reply Br. at 2. With this acknowledgment, he has not cited any definitions limiting the term "notice" to communications with the public. But, as noted above, *Webster's Third New International Dictionary* supplies eighteen definitions of the term "notice," and none contains a public component.

Nonetheless, Mr. Franklin argues that

- the term "advertisement" requires a public component, and

- because the terms "advertisement" and "notice" are parts of a series, the canon of *noscitur a sociis* (a word is given more precise content by the neighboring words) requires that we treat the term "notice" as if it contained a public component.

This argument is invalid as a matter of law. The Supreme Court has held that a list of three words is too short for application of the canon of *noscitur a sociis*. *Graham Cnty. Soil & Water Conservation Dist. v. United States*, 559 U.S. 280, 288 (2010). If three words is too short for the canon, a list of two words ("advertisement or notice") must also be too short.

For the sake of argument, we might assume that both terms ("advertisement" and "notice") are meant to involve communication with the public. Even with this generous assumption, Mr. Franklin's argument would fail. This argument is flawed because it assumes a communication is "public" only if it is "indiscriminately" and "impersonally" made available to everyone.

6

The public consists of numerous groups. For example, dozens of individuals may belong to an exclusive wholesale club. Though the number of members is limited, communications to the membership would remain public even if they were not "indiscriminate" or "impersonal." Similarly, a popular basketball star might have hundreds or thousands of "friends" on his or her Facebook page. Though the "friends" are limited, communications to these individuals would be considered "public" even if they are not "indiscriminate" or "impersonal."

Like members of a wholesale club or "friends" on a basketball star's Facebook page, membership in an informal group of like-minded individuals would constitute a subset of the public.[1] Our subset of the public, GigaTribe subscribers interested in child pornography, could be considered "the public" even if Mr. Franklin were correct about the need for a public component.

Mr. Franklin likens this group to family members, suggesting that communications to family members would not be considered "advertisements." But Mr. Franklin's GigaTribe "friends" were not family members or even acquaintances. They were fellow subscribers, accepted by Mr. Franklin, who shared his interest in child pornography. Unlike a family relationship, Mr. Franklin's connection with the 108 individuals existed solely to share child

---

[1] Mr. Franklin acknowledges that the term "'public' . . . can . . . mean a subset of people." Appellant's Reply Br. at 10 (quoting Appellee's Resp. Br. at 32).

pornography. We do not view that connection like the bonds that connect family members.

Mr. Franklin argues that no case has ever applied § 2251(d)(1)(A) to a closed network like "GigaTribe," which limits the sharing of files to individuals accepted as "friends." For the sake of argument, we can assume that is true. But other courts have applied the statute to media that limit the sharing of files to particular individuals. *See United States v. Wayerski*, 624 F.3d 1342, 1348 (11th Cir. 2010) (45 members using complex encryption methods); *United States v. Rowe*, 414 F.3d 271, 277 (2d Cir. 2005) (chat-room posting).

This application of the statute is hardly novel. Congress surely did not intend to limit the statute's reach to pedophiles who indiscriminately advertise through traditional modes of communication like television or radio. Congress was trying to capture all advertisements or notices targeting individuals interested in obtaining or distributing child pornography, like Mr. Franklin and his GigaTribe "friends." *See* H.R. Rep. No. 99-910, at 6 (1986) (stating that in adopting § 2251, Congress sought to criminalize new technological devices, like "computer 'bulletin boards,'" that contain offers of child pornography); S. Rep. No. 99-537, at 13-14 (1986) (discussing the increasing danger from computer bulletin boards, serving as "an electronic form" of classified ads for the exchange of communications among pedophiles).

8

We conclude that a rational fact-finder could regard Mr. Franklin's postings of child pornography as advertisements or notices under § 2251(d)(1)(A).

## II.     Substantive Reasonableness of the Sentence

On each of the five counts, the district court imposed a separate, consecutive term between 10 and 30 years.[2] These terms totaled 100 years. In Mr. Franklin's view, the 100-year sentence was substantively unreasonable. We disagree.

We engage in limited scrutiny of the sentence, considering only whether the district court acted within its discretion. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1267 (10th Cir. 2014). The court acted within its discretion unless the sentence was "'arbitrary, capricious, whimsical, or manifestly unreasonable.'" *Id.* (quoting *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009)).

Mr. Franklin acknowledges that the sentence fell within the guideline range, which called for life imprisonment. For sentences falling within the

---

[2]     These prison terms were

1.     Advertisement or Notice of Child Pornography: 30 years

2.     Receipt of Child Pornography: 20 years

3.     Distribution of Child Pornography: 20 years

4.     Distribution of Child Pornography: 20 years

5.     Possession of Child Pornography: 10 years

9

guideline range, like this one, we apply a rebuttable presumption of reasonableness. *United States v. Castillo-Arellano*, 777 F.3d 1100, 1104 (10th Cir. 2015). Mr. Franklin argues that we should carve out an exception for the applicable guideline (2G2.2) because it lacks an empirical basis and is overly harsh. We disagree with both arguments.

We have already rejected an empirically based challenge to another guideline (2G2.1) in *United States v. Grigsby*, 749 F.3d 908, 910-11 (10th Cir. 2014). There we relied on a Fifth Circuit case analyzing 2G2.2. *Id.* at 911 (citing *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011)). Ultimately, both cases reasoned that a guideline range deserves consideration whether it is "'[e]mpirically based or not.'" *Id.* (quoting *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011)). Under *Grigsby*, we apply the presumption of reasonableness to sentences based on 2G2.2, regardless of its alleged lack of empirical support.

In Mr. Franklin's view, the harshness of the guideline calls for a presumption of unreasonableness. This view is unsupported. The Supreme Court has stated that we cannot apply a "presumption of unreasonableness" even to sentences outside the guideline range. *E.g.*, *Peugh v. United States*, __ U.S. __, 133 S. Ct. 2072, 2080 (2013). When the sentence is *within* the guideline range, there would be even less justification for a presumption of unreasonableness.

Mr. Franklin argues that even if the presumption of reasonableness applies, the total prison term of 100 years remains too harsh because his actions

10

constituted "run-of-the-mill" crimes that are characteristic of any distributor of child pornography. The district court viewed the crime differently, explaining that

- Mr. Franklin had downloaded hundreds of thousands of images containing child pornography,

- the images showed child molestation, intercourse with children, and inappropriate sexual activity with prepubescent minors,

- Mr. Franklin's compilation of child pornography resulted in continued danger, fear, trauma, anxiety, and stress to the children being depicted, and

- there was a need to prevent Mr. Franklin from committing further crimes.

Appellant's App., vol. 4, at 1699-1702.

Criticizing this explanation, Mr. Franklin argues that the district court failed to take into account the Sentencing Commission's policy statements.[3] But the policy statements would not have rendered the sentence arbitrary, capricious, whimsical, or manifestly unreasonable.

---

[3] This contention arguably relates to procedural reasonableness rather than substantive reasonableness. *See United States v. Sanchez*, 517 F.3d 651, 661 (2d Cir. 2008) ("A sentence would be procedurally unreasonable if, for example, the sentencing judge failed to consider the factors listed in § 3553(a), including the relevant . . . policy statements."); *see also United States v. Sanchez-Leon*, 764 F.3d 1248, 1268 n.15 (10th Cir. 2014) (stating that procedural reasonableness is implicated when the contention involves a failure to consider relevant factors). But Mr. Franklin couched this contention as one involving substantive reasonableness. We will address the contention in the way it was framed by Mr. Franklin. *See United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("A challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence.").

11

Finally, Mr. Franklin argues that the sentence is disproportionate to other sentences for similar conduct. This argument is unsupported.[4]

The purpose of the sentencing guidelines is "to eliminate disparities among sentences nationwide." *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008); *see United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993) ("Congress chose to avoid unwarranted disparities through a guideline system which considered various facts concerning the offense and the offender."). Thus, when the district court "correctly calculated and carefully reviewed the Guidelines range, [it] necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Gall v. United States*, 552 U.S. 38, 59 (2007). Neither the Supreme Court nor our court has ever suggested that use of the guidelines can create a nationwide disparity in sentences involving similarly situated offenders. *Cf. United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009)

---

[4] Though nationwide disparities are appropriate considerations, they are not always dispositive. Even when national disparities exist, the sentence may remain substantively reasonable if other factors justify the sentence or the disparity is explainable on the existing record. *See United States v. Martinez*, 610 F.3d 1216, 1228 (10th Cir. 2010) (stating that consideration of unwarranted disparities is only one of the relevant factors and that sentence disparities may be allowed when explainable under the record). Thus, the sentence may be substantively reasonable even when disparities are unwarranted. *See United States v. Morales-Chaires*, 430 F.3d 1124, 1131 (10th Cir. 2005) (declining to decide if sentencing disparities were unwarranted because the sentence would be substantively reasonable in light of the other factors in § 3553(a)).

12

("A sentence within a Guideline range 'necessarily' complies with

§ 3553(a)(6).").

Mr. Franklin suggests that his sentence is "unprecedented," pointing to

sixteen cases in which the defendant obtained a total sentence of less than 100

years.[5] These citations do not justify reversal.

None of these citations were given to the district court. Instead, in district

court, defense counsel said only that he was "unaware of anybody who [had] been

charged with these offenses, without any charges for hands-on offenses, that [had]

received a life sentence." Appellant's App. at 1679. Thus, the district court had

no actual cases to suggest disparities between a 100-year sentence and other

sentences for similar offenders.

---

[5]      Appellant's Second Amended Opening Br. at 32-37 (citing *United States v. Lucero*, 747 F.3d 1242 (10th Cir. 2014); *United States v. Huffman*, 531 F. App'x 876 (10th Cir. 2013) (unpublished); *United States v. Slinkard*, 530 F. App'x 759 (10th Cir. 2013) (unpublished); *United States v. Ray*, 704 F.3d 1307 (10th Cir. 2013); *United States v. Dayton*, 485 F. App'x 937 (10th Cir. 2012) (unpublished); *United States v. Freerksen*, 457 F. App'x 769 (10th Cir. 2012) (unpublished); *United States v. Ilgen*, 417 F. App'x 728 (10th Cir. 2011) (unpublished); *United States v. Regan*, 627 F.3d 1348 (10th Cir. 2010); *United States v. Byrum*, 567 F.3d 1255 (10th Cir. 2009); *United States v. Gay*, 265 F. App'x 688 (10th Cir. 2007) (unpublished)); Appellant's Reply Br. at 30 (citing six more cases: *United States v. Nance*, 767 F.3d 1037 (10th Cir. 2014); *Jameson v. Samuels*, 555 F. App'x 743 (10th Cir. 2014) (unpublished); *United States v. Baum*, 542 F. App'x 724 (10th Cir. 2013) (unpublished); *United States v. Ramos*, 695 F.3d 1035 (10th Cir. 2012); *United States v. Geiner*, 498 F.3d 1104 (10th Cir. 2007); *United States v. Shaffer*, 472 F.3d 1219 (10th Cir. 2007)).

13

Even now, we have little to gauge the similarities and differences between

Mr. Franklin and the defendants in the sixteen cases. "No two cases are

identical,"[6] and comparison of "an individual sentence with a few counsel-

selected cases involving other defendants sentenced by other judges is almost

always useless." *United States v. Scherrer*, 444 F.3d 91, 95 (1st Cir. 2006).

Even if we wanted to compare Mr. Franklin's sentence to the sentences in

the sixteen cases he cites, they are difficult to compare:

- Mr. Franklin's conviction included notice or advertisement of child pornography; none of the sixteen cited cases involved a conviction under this statute.

- Mr. Franklin's charges carried a statutory maximum of 100 years; in only two of the sixteen cited cases were the defendants guilty of charges carrying a statutory maximum of at least 100 years.[7]

---

[6]    *United States v. Lente*, 759 F.3d 1149, 1171 (10th Cir. 2014).

[7]    These two cases were *United States v. Freerksen* and *United States v. Nance*.

In *Freerksen*, the defendant was convicted on five counts of producing child pornography. *United States v. Freerksen*, 457 F. App'x 769, 770 (10th Cir. 2012) (unpublished). The statutory maximum was 150 years. *See* 18 U.S.C. § 2251(e) (2006); Presentence Investigation Report at 18, *United States v. Freerksen*, Case No. CR-10-188-R (W.D. Okla. Feb. 4, 2011). The district court sentenced Mr. Freerksen to 50 years, which would render him eligible for release at the age of 78. Sent. Tr. at 22, *United States v. Freerksen*, Case No. CR-10-188-R (W.D. Okla. Aug. 16, 2010). In imposing this sentence, the district court considered the codefendant's sentence, which had been only ten years. *See id.* at 16 (statement by the sentencing judge that he would consider the codefendant's sentence); Judgment, *United States v. Freerksen*, Case No. CR-10-188-R (W.D. Okla. Feb. 8, 2011) (sentence of the codefendant for ten years).

In *Nance*, the defendant was convicted of 57 counts. *United States v.*

14

- Under the guidelines, Mr. Franklin's sentence was calculated at life imprisonment while in fourteen of the sixteen cited cases, the guideline ranges had peaked at 300 or fewer months.[8]

- Mr. Franklin was convicted on five counts related to child pornography; only three of the sixteen cited cases involved five or more counts.[9]

---

*Nance*, 767 F.3d 1037, 1039 (10th Cir. 2014). The statutory maximum was 1,140 years. *See* 18 U.S.C. § 2252(a)(1)-(2) (2012) (20-year maximums for both of the statutes involved). Notwithstanding the high statutory maximum, the guideline range was only 210-262 months. Presentence Investigation Report at 20, *United States v. Nance*, Case No. CR-12-267 (W.D. Okla. revised June 11, 2013); Statement of Reasons, *United States v. Nance*, Case No. CR-12-267 (W.D. Okla. Aug. 5, 2013) (adopting the presentence investigation report). The probation officer suggested that the guideline range might be overly harsh based on the defendant's steady employment, difficult childhood, youth, and lack of criminal history. Presentence Investigation Report at 24-25, *United States v. Nance*, Case No. CR-12-267 (W.D. Okla. revised June 11, 2013). The district judge agreed that the guideline range was too harsh; thus, he varied downward and imposed concurrent terms of 64 months. Judgment at 2, *United Sates v. Nance*, Case No. CR-12-267 (W.D. Okla. Aug. 5, 2013).

[8] The two exceptions were *United States v. Byrum* and *United States v. Freerksen*.

In *Byrum*, the guideline range was 324 to 405 months. Presentence Investigation Report at 17, *United States v. Byrum*, No. CR-08-117-C (W.D. Okla. Aug. 18, 2008). The government and the defendant agreed to a 15-year sentence, and the court approved the agreement and imposed a 15-year sentence. *Id.* at 17; *United States v. Byrum*, 567 F.3d 1255, 1258 (10th Cir. 2009).

*Freerksen* is discussed above. *See* note 7, above. The sentencing guidelines called for life imprisonment. *Id.* But the district court imposed "only" 50 years, reasoning that the codefendant had obtained a much lighter sentence and 50 years would keep the defendant in prison until his 70s, when he would no longer pose a threat. *See id.*

[9] These cases were *United States v. Lucero*, *United States v. Nance*, and *United States v. Freerksen*. In *Lucero* and *Nance*, despite the multiple counts, the guideline ranges were capped at only 97 and 262 months. *See* Statement of

None of the sixteen cases involved all of the same circumstances as Mr. Franklin's.

We addressed a similar issue in *United States v. Lewis*, 594 F.3d 1270 (10th Cir. 2010). There the defendant provided the district court with a document describing the sentences of 28 defendants convicted of similar crimes. *Lewis*, 594 F.3d at 1276. But we noted that § 3553(a)(6) requires consideration only if the defendants had similar records and guideline calculations. *Id.* (quoting *United States v. Verdin-Garcia*, 516 F.3d 884, 899 (10th Cir. 2008)). We concluded that the defendant had failed to fulfill his burden in district court by omitting information about the 28 defendants' offense levels, criminal histories, and specifics of the offenses. *Id.*

Here the evidence is even weaker. Unlike the defendant in *Lewis*, Mr. Franklin did not provide the district court with *any* evidence of nationwide disparities. In his appeal, Mr. Franklin cited sixteen cases in arguing that his sentence is unprecedented. But like the defendant in *Lewis*, Mr. Franklin failed to

Reasons, *United States v. Lucero*, Case No. CR-12-1662 (D. N.M. Apr. 4, 2013) (guideline range of 78-97 months); note 7, above (noting that the guideline range for the *Nance* defendant was 210-262 months). In *Freerksen*, the guidelines called for life imprisonment, but the sentencing judge varied downward to 50 years, reasoning that the defendant would be in his 70s when released and his codefendant had obtained a sentence of only 10 years. *See* note 7, above (discussing the circumstances leading to the sentence in *Freerksen*).

supply information about the defendants' offense levels, criminal histories, or specifics of the offenses. Without this information, we cannot ascertain

- whether the sixteen other sentences involved similar circumstances or,

- if they did, whether the disparities were warranted.

*See United States v. Boneshirt*, 662 F.3d 509, 519 (8th Cir. 2011).[10]

In our review of the sixteen cases, we conclude that the defendants did not have "similar records and guidelines calculations." In each case, a unique combination of factors led to the sentence; and those circumstances differed from Mr. Franklin's.

In our view, Mr. Franklin's arguments do not render his sentence arbitrary, capricious, whimsical, or manifestly unreasonable. As a result, we conclude that the district court acted within its discretion in imposing consecutive sentences totaling 100 years.

## III.   Judge-Found Facts

In the alternative, Mr. Franklin argues that the sentence is substantively reasonable only because the district court found facts triggering several

---

[10]    In *Boneshirt,* the defendant presented statistical data in district court to show that his sentence was disproportionate with other sentences within the Eighth Circuit. 662 F.3d at 519. The Eighth Circuit Court of Appeals held that the district court had properly rejected the argument because the statistics involved only similar convictions, not similar records or conduct, and failed to account for enhancements that served to lengthen the sentence. *Id*.

17

enhancements.[11] In Mr. Franklin's view, the Sixth Amendment required submission of these factual issues to a jury.

Mr. Franklin concedes that we must confine our review to the plain-error standard. There was no error, plain or otherwise, for we rejected the same argument in *United States v. Redcorn*, 528 F.3d 727, 745-46 (10th Cir. 2008). As a result, we reject Mr. Franklin's challenge.

## IV. Conclusion

Accordingly, we affirm.

---

[11] These facts involved distribution of child pornography for something of value, a pattern of activity involving sexual abuse or exploitation of a minor, and depiction of at least 600 images of child pornography. With these facts, the offense level was increased by fifteen.