**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 13, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JILL M. EVANS,

     Defendant - Appellant.

No. 17-1185
(D.C. No. 1:15-CR-00220-JLK-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

Defendant Jill Evans appeals her 84-month sentence imposed by the United States

District Court for the District of Colorado. She challenges the procedural and substantive

reasonableness of the sentence. Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

## I. BACKGROUND

In May 2015, Defendant was indicted on eight counts of wire fraud in violation of

18 U.S.C. § 1343 and six counts of money laundering in violation of 18 U.S.C. § 1957.

On January 23, 2017, she pleaded guilty to two counts as part of a plea agreement. In

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

return, the government dismissed the remaining counts.  In the plea agreement the parties stipulated to the following facts:

Defendant began her fraudulent scheme in late 2011.  She told would-be investors that they could quickly make a return of up to 50 times their original investments in deals to purchase tankers of diesel oil and jet fuel if they would pay some shipping, storage, and other fees.  She claimed that an international law firm was involved in the transaction and "documented" her claim with forged e-mails and letters purporting to be from an attorney in the firm stating that the deals were proceeding.  She also misrepresented to investors that Barclays Bank was vetting the transaction, when in reality Barclays had refused to open a bank account for her because of her lack of business history.  In addition, she falsely told victims that she and her husband had personally invested in the deals, forging documents purporting to show that she had invested $200,000 to pay fees for the fictitious fuel transactions.

Defendant used the victims' funds to cover her personal expenses, including her son's college tuition and rent, mortgage payments, credit-card payments, restaurant and vacation costs, and restitution for a prior state-court fraud conviction.  Although the deals never came to fruition, she continued to promise for several more years that funding was imminent.  The investors lost more than $2 million.

The presentence report (PSR) prepared after Defendant's guilty plea calculated her offense level as 26 and her criminal-history level as Category II, producing a guidelines range of 70–87 months' imprisonment.  Despite her guilty plea, the PSR suggested that Defendant not receive a downward adjustment for acceptance of responsibility because

"the defendant ha[d] not voluntarily terminated or withdrawn from fraudulent, criminal conduct." R., Vol. 2 at 101. In support of this determination the PSR reported that in November 2016, Defendant had lied to her probation officer about the reason for her termination from a job—she told him that she had left because she "couldn't sell anything," but she had actually been terminated for falsifying and forging documents. *Id.* (internal quotation marks omitted). And it said that in August 2016 she had obtained court permission to go to New York to help her son move there, but it was later discovered that her son had neither traveled to New York nor planned to do so, and that Defendant had engaged in activity connected to her fraudulent scheme while in New York.

The sentencing hearing was conducted on May 3, 2017. The district court stated at the outset that it would not be following the Guidelines in imposing sentence because of its disagreement with the Sentencing Commission's use of data in setting the fraud guideline and its belief that the guideline did not properly reflect the purposes of sentencing set forth in 18 U.S.C. § 3553. As recommended by the PSR, it denied the parties' joint motion for a downward adjustment for acceptance of responsibility, ruling that "the defendant after the plea engaged in further deceptions and evasions, and I do not think that constitutes acceptance of responsibility." Case No. 15-cr-00220-JLK, Dkt. No. 123, May 3, 2017, Sentencing Tr. at 9. It imposed a sentence of 84 months' imprisonment. The court explained its sentence at length, consuming some seven pages of the hearing transcript. It highlighted the egregiousness of Defendant's crime; her lack of sympathy for her victims; the continuation of her illegal activity; the need to reflect the

3

seriousness of her offense and provide just punishment, to promote respect for the law, and to adequately deter her from further criminal conduct; and the potential value of providing her with access to educational and vocational training, as well as cognitive behavioral therapy.

After the sentencing hearing the district court completed a Statement of Reasons form. The court noted: "Guidelines advice rejected. Sentenced per 18 U.S.C. § 3553," R., Vol. 2 at 213, although it checked the box on the form stating that the sentence was within the guideline range. As "ADDITIONAL BASIS FOR THE SENTENCE IN THIS CASE," the court wrote: "See Sentencing Statement in the transcript of May 3, 2017, sentencing proceedings." *Id.* at 216.

## II.    DISCUSSION

Defendant challenges both the procedural and substantive reasonableness of her sentence. We have explained the two concepts as follows:

> Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the sentence. Substantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the totality of the circumstances.

*United States v. Vigil*, 696 F.3d 997, 1001–02 (10th Cir. 2012) (brackets, citation, and internal quotation marks omitted). We begin with the procedural-reasonableness challenge. Some of what Defendant characterizes as substantive-reasonableness arguments should have been characterized as procedural-reasonableness arguments, so

4

our organization does not track the organization of her opening brief.  But the substance of our analysis of each argument is not affected by the characterization.

## A.  Procedural Unreasonableness

Defendant mounts two challenges to the procedural reasonableness of the district court's imposition of sentence:  (1) the court made unsupported factual findings; and (2) the court did not follow proper procedures in determining the appropriate sentence. Some of Defendant's arguments were not presented to the district court.  For those unpreserved arguments, we review for plain error and can grant relief only if the following four requirements are met:  "(1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) (brackets and internal quotation marks omitted).

### 1.  Factual Findings

#### a.  Remorse and Sympathy

Defendant disputes the district court's finding that she had not expressed sympathy for her victims until the sentencing hearing itself.  *See* Sentencing Tr. at 124:18–24 ("One of the things that is extremely poignant to me is that it was only about five minutes ago that this defendant made any statement at all expressing sympathy for the victims in this case.").  She argues that she had repeatedly expressed remorse, as indicated in three letters to the court from her friends and a report by a psychiatrist that quoted her as saying that she "wish[ed she] would have made better decisions" and that

she was "sorry it came to all those things and that I can't change it." R., Vol. 2 at 207. But absent expressions of sympathy for the victims, her expressions of remorse could easily be viewed as merely reflecting regret at getting caught. In our view, Defendant's continuing to lie and failure to express sympathy for the victims adequately supported the district court's finding.

### b. Acceptance of responsibility

Defendant also argues that the district court erroneously failed to find that she had accepted responsibility for her crimes. The Sentencing Guidelines allow a two-level reduction in the applicable offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for h[er] offense." USSG § 3E1.1(a). One appropriate consideration is "voluntary termination or withdrawal from criminal conduct." *Id.* n.1(B).

"Determination of acceptance of responsibility is a question of fact reviewed under a clearly erroneous standard." *United States v. Gauvin*, 173 F.3d 798, 805 (10th Cir. 1999). Thus, we will reverse only if "we are left with the definite and firm conviction that a mistake has been committed." *United States v. Battles*, 745 F.3d 436, 458 (10th Cir. 2014) (brackets and internal quotation marks omitted). Because "'[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. . . , the determination of the sentencing judge is entitled to great deference on review.'" *Gauvin*, 173 F.3d at 805 (quoting USSG § 3E1.1, comment n.5). Reversal of the denial of the adjustment is also more difficult because the defendant has the burden of showing entitlement to the adjustment, so we must affirm if it was reasonable for the

6

sentencing judge not to be persuaded by the defendant's evidence. *See Battles*, 745 F.3d at 458.

Defendant does not challenge the court's findings regarding her post-plea misconduct. Her argument relates to the timing. She contends that the court's reliance on "[a]ny alleged activities that took place AFTER the plea" was misplaced because such acts "do[] not in any way diminish that Ms. Evans pled guilty, saving the Government and the victims from the ordeal and cost of a trial." Aplt. Br. at 25. This contention, however, is contrary to circuit precedent, which has affirmed the denial of the adjustment because of post-plea misconduct. *See Prince*, 204 F.3d at 1022–23; *see also United States v. Downing*, Case No. 17-6058, 2017 WL 6016335, at *2 (10th Cir. Dec. 5, 2017) (unpublished). At oral argument Defendant contended that her post-plea misconduct was not sufficiently egregious to justify denial of the adjustment. But that point was not raised in her opening brief on appeal, so we decline to address it. We affirm the district court's denial of the motion for a downward adjustment for acceptance of responsibility.

### 2. Proper Procedure

Defendant raises several challenges to the district court's sentencing methodology. In reviewing a sentence challenged on procedural grounds, we ordinarily review for an abuse of discretion. *See Gantt*, 679 F.3d at 1246. But, as previously noted, if the defendant failed to preserve the procedural challenge below, we review for plain error. *See id.*

The Supreme Court has charted the proper course for district courts to follow in imposing sentence:

> First, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The district court must then consider the arguments of the parties and the factors set forth in [18 U.S.C.] § 3553(a). The district court may not presume that the Guidelines range is reasonable; and it may in appropriate cases impose a non-Guidelines sentence based on disagreement with the Sentencing Commission's views. The district court must explain the basis for its chosen sentence on the record. A major departure from the Guidelines should be supported by a more significant justification than a minor one.

*Peugh v. United States*, 569 U.S. 530, 536–37 (2013) (brackets, citations, and internal quotation marks omitted).

The district court complied with this procedure. It correctly calculated the guidelines range, considered the § 3553 factors and the arguments from counsel, did not presume that the guidelines range was reasonable, and thoroughly explained its reasoning on the record. Defendant's arguments to the contrary are not persuasive.

Defendant claims that the district court "would not acknowledge the role that other persons, particularly her [deceased] husband, played in the [fraudulent] scheme." Aplt. Br. at 30. But the district court clearly did so when it stated that it did not "have any doubt at all that other people were involved in this." Sentencing Tr. at 126:5–6. And it responded reasonably when it said that it was "concerned about this defendant, not about [Defendant's husband], not about any of these other people who were participants in this fraud." *Id.* at 126:5–11.

Defendant also challenges the district court's method of sentencing, arguing that the district court's "process and procedure in this case is very confusing," because the court both stated that it would grant a variance and imposed a sentence within the

8

Guidelines. Aplt. Br. at 21. We do not see the inconsistency. As we understand the district court, when it said that it would vary from the Guidelines, it was not predicting the ultimate sentence it would impose but only how it would reach its conclusion. It was not persuaded by the guideline for fraud offenses and therefore looked simply to the § 3553 factors (although after calculating the guideline sentencing range). Perhaps other judges would use different terminology, but there was certainly no prejudice to Defendant.

Defendant next contends that the district court should not have rejected the guideline for fraud offenses. The court's rejection derived largely from its skepticism of the accuracy of the sentencing statistics on which the guideline levels were based. Despite ample opportunity, however, Defendant did not challenge in district court either the rejection of the fraud guideline or the court's reasons for doing so. We therefore review only for plain error, and affirm. It is well-settled that sentencing judges are not prohibited from rejecting guidelines. *See Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007). And Defendant's use of statistics to try to support the fraud guideline comes too late for plain-error review. *See United States v. Wright*, 848 F.3d 1274, 1285 (10th Cir. 2017) (under plain-error review, failure to raise factual dispute at sentencing in district court waives the error).

In addition, Defendant argues that the district court failed to adequately express its reasons for the sentence. We disagree. Its explanation touched the necessary bases and provided a thorough report of its thinking.

9

Defendant's final procedural challenge is that the district court failed to properly complete the Statement of Reasons by explaining the sentence. But any error in this regard was harmless because "the district court's oral explanation [makes clear] that the district court would have imposed the same sentence had it filed a written statement of reasons form." *United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1264 (10th Cir. 2018).

### B.	Substantive Unreasonableness

Defendant also challenges the substantive reasonableness of her sentence, asserting that it was unreasonably long. "In evaluating the substantive reasonableness of a sentence, we ask whether the length of the sentence is reasonable considering the statutory factors delineated in 18 U.S.C. § 3553(a)." *United States v. Hamilton*, 510 F.3d 1209, 1217–18 (10th Cir. 2007). We review a sentence for substantive reasonableness under an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is unreasonable "only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Gantt*, 679 F.3d at 1249 (internal quotation marks omitted).

In light of the district court's supportable findings regarding the nature of Defendant's offenses, her continuing fraudulent conduct, her lack of sympathy for the victims, and her psychological problems, the sentence imposed easily satisfies the abuse-of-discretion standard. She contends that her sentence fails to reflect the need to avoid sentencing disparities, *see* 18 U.S.C. § 3553(a)(6), citing two sentences imposed in the Eastern District of Tennessee. But as we have explained in rejecting a similar claim, "No two cases are identical, and comparison of an individual sentence with a few counsel-selected cases involving other defendants sentenced by other judges is almost always

10

useless." *United States v. Franklin*, 785 F.3d 1365, 1372 (10th Cir. 2015) (internal quotation marks omitted). Indeed, "the sentence may be substantively reasonable even when disparities are unwarranted." *Id.* at 1371 n.4.

Defendant's final challenge is that the 84-month sentence was substantively unreasonable because a 57-month sentence would be adequate to satisfy the statutory goals of sentencing. But "substantive reasonableness contemplates a range, not a point." *United States v. Martinez*, 610 F.3d 1216, 1227 (10th Cir. 2010) (internal quotation marks omitted). "Even if we might reasonably conclude that a different sentence was also appropriate, that is not a sufficient basis for reversal." *Id.*

We reject Defendant's substantive-reasonableness challenge to her sentence.

## III. CONCLUSION

We **AFFIRM** Defendant's sentence.

Entered for the Court


Harris L Hartz
Circuit Judge

11